IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

VISTA-GRAPHICS, INC, ET. AL.,

        Plaintiffs,

v.                                     Civil Action No. 2:15cv000363

VIRGINIA DEPARTMENT OF TRANSPORTATION, ET. AL.,

        Defendants.

## STATE DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Comes now Defendants Virginia Department of Transportation ("VDOT"), Virginia Tourism Corporation ("VTC"), Charles A. Kilpatrick, P.E., and Aubrey L. Layne (all four defendants hereinafter referred to collectively as the "State Defendants"),[1] by counsel, and in support of the Motion to Dismiss which the State Defendants filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully state as follows:

### I.    Introduction

The Plaintiffs have filed a Complaint pursuant to 42 U.S.C. § 1983 against the State Defendants seeking declaratory and injunctive relief. The Plaintiffs allege that a subsection of the Virginia Administrative Code, 24 VAC 30-50-10(L),[2] as well as certain aspects of programs designed and implemented to enhance tourism advertising opportunities offered at Virginia Welcome Centers and Safety Rest Areas located primarily along Interstate Highways are

---

[1] It should be noted that Plaintiffs list a fifth defendant, Highway Information Media, LLC, ("HIM"). However, in the Complaint, Plaintiffs state that HIM is named as a defendant "solely as a party in interest that may choose to respond." (Compl. ¶ 6). Plaintiffs further assert that HIM is "not required to respond to this lawsuit." (Compl. ¶ 6). Since HIM is not a state entity or employee of the State, this Motion to Dismiss is not filed on behalf of HIM.

[2] 24 VAC 30-50-10 was promulgated pursuant to authority found in § 33.2-210 and § 33.2-246 of the Code of Virginia (1950), as amended, and the subject matter is Waysides and Rest Areas for VDOT.

unconstitutional. The Plaintiffs identify those tourism advertising opportunities as the Sponsorship, Advertising and Vending Enhancement Program ("SAVE") and the Partnership Marketing and Advertising Program ("PMAP").

The Plaintiffs seek (1) a declaration that certain aspects of SAVE and PMAP burden the Plaintiffs' right to free speech; (2) a declaration that certain aspects of SAVE and PMAP pertaining to content review and approval deny due process; (3) a declaration that 24 VAC 30-50-10(L) is unconstitutionally restrictive and vague; and (4) a declaration that the Plaintiffs have the right to place and distribute their publications/communications at public rest areas and welcome centers free of charge, or alternatively, at no more than the actual cost to the State.[3] The Plaintiffs also seek injunctive relief against any enforcement of those two tourism advertising programs and 24 VAC 30-50-10(L).

This Court should grant the State Defendants' Motion to Dismiss. The Plaintiffs do not allege any facts which support any claim that the State Defendants have acted to deny the Plaintiffs any constitutional or statutory rights. Rather, the Plaintiffs seek to have this Court provide an advisory opinion. State Defendants state there is no case or controversy before the Court on the issues raised by the Plaintiffs. In addition, the Plaintiffs do not have standing to bring this Complaint and this case is not ripe for consideration. Furthermore, the state government requirements placed on the content of the publications at the Welcome Centers and Safety Rest Areas constitute the valid exercise of government speech. As government speech, the Plaintiffs' constitutional claims about denial of Free Speech and denial of due process have no merit. Additionally, the Motion to Dismiss should be sustained because VDOT and VTC are state agencies and not "persons" under 42 U.S.C. § 1983. Finally, Secretary Layne and Charles A. Kilpatrick, P.E. are not proper parties to this action. For all the reasons stated in this

---

[3] See Compl. at 17 – 19.

Memorandum of Law in Support of Motion to Dismiss, the Complaint, on its face, does not state any claim for relief that can be granted by the Court. Accordingly, the State Defendants request that this Court grant their Motion to Dismiss and dismiss the Plaintiffs' Complaint with prejudice.

## II.   Facts Raised in Complaint

1. Plaintiffs allege that Vista-Graphics, Inc. ("Vista-Graphics") is a publisher of three visitor guides available to people seeking information on lodging, attractions, restaurants and other products and services benefiting Virginia businesses as well as visitors to Virginia. (Compl. ¶ 1). P

2. Plaintiffs allege that at one time they were able to place their publications at Virginia Welcome Centers and Safety Rest Areas at no cost. (Compl. ¶ 10). However, the Plaintiffs allege that in 2012, the SAVE and PMAP programs were implemented in an effort to generate revenue for the State of Virginia by charging a fee to place such publications at the Welcome Centers and Safety Rest Areas. (Compl. ¶¶ 8, 9).

Plaintiffs state that the SAVE program has three components: sponsorships; advertising; and vending. (Compl. ¶ 9). The Plaintiffs' Complaint only addresses one component of the SAVE program – advertising.

3. Plaintiffs further allege that since the implementation of the SAVE program, VDOT, through its contractor HIM, requires Vista-Graphics to pay a fee to place its publications at the Welcome Centers and Safety Rest Areas. (Compl. ¶ 10).[4] However, the Plaintiffs, however, fail to make any allegation that one or more of the State Defendants have refused to display a particular publication due to its content or refused to allow a publication to be displayed.

---

[4] In a Motion to Dismiss, facts as alleged are assumed to be true, but it should be noted that Exhibit G to the Complaint shows that the contract is between VTC and HIM, and not between VDOT and HIM.

4. Plaintiffs attach four documents (Exhibits E, F, G and H) to their Complaint which they claim are overly broad and unduly vague.

5. Exhibit E to the Complaint is an internal VDOT Maintenance Division Directive ("Directive") which explains to VDOT staff the implementation of the SAVE program. Effective March 29, 2013, the Directive sets forth the purpose of the program, the implementation standards, the review standards for advertisements, and the process for review of agency decisions. Part 3 of the Directive sets forth the procedures to be followed in the event of any issue concerning the implementation of the SAVE program by VDOT, including allowing the opportunity for access by any other party (including Plaintiffs) to administrative hearings and judicial review under the Administrative Process Act ("APA").

6. Exhibit F to the Complaint is 24 VAC 30-50-10. This state government regulation addresses requirements for waysides and rest areas. The Plaintiffs allege that 24 VAC 30-50-10(L) unconstitutionally provides that "No threatening, abusive, boisterous, insulting or indecent language or gesture shall be used within this area. Nor shall any oration, or other public demonstration be made, unless by special authority of the commissioner." Under subsection S of that same regulation, as authorized by Code of Virginia § 33.2-246, any violation of such rule could constitute a misdemeanor and be subject to a fine not less than five dollars nor more than $100.

7. Exhibit G to the Complaint is an alleged contract between VTC and HIM, dated June 1, 2015. The scope of the work by HIM under that contract is to "plan, implement, deliver and manage" opportunities for advertising at Welcome Centers and Safety Rest Areas in Virginia. *See* Compl. Ex. G at 2. Under Contract Term and Condition PP at page 24 of Exhibit G, if HIM does not provide the goods and services "in accordance with applicable laws, regulations or

4

contract provisions," and does not cure the deficiency within a reasonable time, the contract can be terminated by VTC and VTC may procure the services from another contractor.

8. Exhibit H to the Complaint is a document titled Virginia Welcome Centers and Safety Rest Areas Partnership Marketing & Advertising Program Policies. The Plaintiffs represent that the document was provided by VTC, and thus, it is presumably alleged to be a VTC document. (Compl. ¶ 18). This document describes in greater detail the PMAP program, the approval process, and advertising opportunities. Under the document, VTC is alleged to be the state agency with final authority for the distribution and display of advertisement, and thus, any such agency decision would be, by law, subject to the APA, including judicial review.

9. Plaintiffs make no claim in the Complaint that any of the State Defendants have prohibited them from displaying any particular publication at a rest area or welcome center. Plaintiffs do not allege that any of their three publications have been restricted by content in any manner whatsoever. Plaintiffs do not allege that any criminal charge has ever been issued against them and do not allege that any administrative action has ever been taken against them. Plaintiffs do not allege that any threat of such action has ever been issued against them.

### III. Argument

#### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v Iqbal*, 556 U.S. 662, 884, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp v Twombly*, 550 U.S. 544, at 557, 127 S. Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). This "plausibility

standard," the Supreme Court explained, is not a probability requirement, but it asks for "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). In a case where a plaintiff "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (*quoting Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955).

Where a complaint pleads facts that are merely consistent with liability, it is insufficient to raise a plausibility of entitlement to relief as required by Fed. Rule Civ. Proc. 8(a)(2). *Ashcroft, supra., Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009). While a court must take the factual allegations as true when considering a motion to dismiss, "the court is not bound to accept as true a legal conclusion couched as a factual assertion." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 191937 (*quoting Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). While detailed factual allegations are not required, mere "labels and conclusions" are insufficient "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (*citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc*., 40 F.3d 247, 251 (CA7 1994), and *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, (1986)). In summary, a court need not accept a plaintiff's "unwarranted deductions," "rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

**B.     The Complaint Does Not State a Justiciable Controversy and Does Not Provide a Basis for a Declaratory Judgment Or Injunctive Relief**

The Plaintiffs have not alleged that there is an actual controversy between them and the State Defendants that requires resolution by this Court by way of a declaratory judgment or injunctive relief. The Plaintiffs have not alleged any attempt to enforce the provisions of Exhibits E, F, G and H, and they have not alleged any threat to enforce the same. In order to

6

obtain declaratory relief, a plaintiff must demonstrate that there is a "justiciable controversy." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). The courts have consistently stated that they only address disputes that are "definite and concrete, touching the legal relations of parties having adverse interests." *Id.* The same standard applies to a request for declaratory relief and requires a controversy of "sufficient immediacy and reality [as] to warrant the issuance of a declaratory judgment." *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167-68 (4th Cir. 1990) (*quoting Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 88 S.Ct. 1942 (1941)). The Courts will not issue an advisory opinion, addressing a question that is not in actual dispute. *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions."); *Shenandoah Valley Network v. Capka*, 669 F.3d 194, 202 (4th Cir. 2012) ("[A] dispute is lacking here — and because we cannot issue an advisory opinion — we have no authority to adjudicate this suit.").

The Complaint lists four documents – Exhibits E, F, G, and H - which the Plaintiffs allege are overly broad and unduly vague. The Plaintiffs seek declaratory relief that said documents and the SAVE and PMAP programs do not provide meaningful guiding standards or procedures. However, the Complaint completely fails to allege how the Plaintiffs have been directly, or even indirectly, affected by these allegedly unconstitutional requirements, other than having to pay a fee to have their three visitor guides placed in the Welcome Centers and Safety Rest Areas.

The Plaintiffs are asking this Court to render an advisory opinion. The Plaintiffs do not allege that they have ever been told by VDOT or VTC that any of their three publications or any ad therein violates the restrictions in Exhibits E, F, G or H. The Plaintiffs do not allege that any

7

citizen has ever complained to any Defendant that the Plaintiffs' publications are offensive, deceptive or otherwise in violation of the restrictions in Exhibits E, F, G or H. The Plaintiffs do not allege that they have ever been threatened with a misdemeanor charge under Exhibit F for violating the restrictions therein. The Plaintiffs do not allege that they ever asked for a review of an advertisement which was rejected. The Plaintiffs do not allege that an administrative hearing under the APA as allowed under Exhibit E has been requested to challenge any administrative decision issued by VTC or VDOT to deny an advertisement or publication under Exhibits G or H, or that the Plaintiffs have ever received an adverse decision under the APA. There has been no threat to deny or any actual denial of the Plaintiffs' right to free speech.

The Plaintiffs are raising purely speculative arguments. The Plaintiffs raise the mere possibility that they may be adversely affected. Yet, there is no "concrete" dispute or justiciable controversy in this case. The Plaintiffs have not alleged that they have been told by any State Defendant to not publish any advertisement in any of the years since the SAVE or PMAP programs were initiated. The Court should grant the Motion to Dismiss because the Plaintiffs have not alleged facts sufficient to raise a justiciable controversy for this Court to determine.

### C. The Plaintiffs Do Not Have Standing to Bring the Complaint

The Courts have stated that the issue of justiciability also implicates the issues of standing and ripeness. *See e.g. Kemler v. Poston*, 108 F.Supp. $2^d$ 529, 534 (E.D. Va. 2000). In order to show standing, a party must show, among other things, that he suffered some actual or threatened injury as a result of the alleged illegal conduct of the defendants. *Kemler* at 534 (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464 (1982). In *Kemler*, plaintiffs, two judges, sought declaratory and injunctive relief on whether actions and/or possible actions by state entities which regulated or provided

8

advice to members of the state judiciary violated their rights under the First and Fourteenth Amendment to the Constitution of the United States. The plaintiffs complained of an advisory opinion by the Judicial Review and Inquiry Commission that Virginia judges must refrain from voting in primary elections. In that case, the Court found that the plaintiffs failed to establish that they faced any actual or imminent injury or that they had been threatened with imminent enforcement. *Id.* at 537 – 538. The Court stated that the two plaintiffs did not have standing to bring such a lawsuit, and thus, the claim was not justiciable. *Id.* at 534 – 539. Further, the Court noted the plaintiffs failed to show that they had a protected interest that was (1) concrete and particularized; and (2) actual or imminent, not conjectural or hypothetical. *Id*. at 534. The same reasoning is applicable in the instant case. Just as in *Kemler,* at 538, the Plaintiffs have not stated they have been subjected to any enforcement action or that the Plaintiffs have been threatened with imminent enforcement.

### D.  The Matter is not Ripe for Consideration

"For a case or controversy to be ripe for judicial review, it must involve 'an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* at 540 (quoting *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)(brackets in original). The Plaintiffs do not allege that they have ever been barred from placing any particular ad in their publications by the State Defendants and they do not allege that they have even asked the State Defendants for a decision on any particular advertisement for their publications. There is no particularized controversy in this case that warrants this Court's adjudication, but rather, there are merely future uncertainties. The Plaintiffs do not meet any of the criteria for ripeness (e.g. fitness and hardship) as set for in

9

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) and in *Kemler,* at 539 – 543. Therefore, this matter is not ripe for consideration.

    **E.**    **The Requirements for Publications are Government Speech and Can Be Regulated**

The Complaint states that the Defendants' actions are "unconstitutional" and that the regulations and procedures set forth by the Defendants are "overbroad" and "unduly vague." (Compl. ¶ 17). The Plaintiffs seem to argue that simply because a government agency has placed restrictions on literature distributed on government property, there is a Constitutional violation. However, Plaintiffs do not provide any relevant First Amendment analysis to support their claim and therefore fail to address the first step of that analysis, whether or not the speech *itself* is private or government speech.

As the Supreme Court has repeatedly recognized, the "government can speak for itself," and, "when the government speaks, it is not barred by the Free Speech clause from determining the content of what it says." *Walker v Texas Division, Sons of Confederate Veterans*, 135 S.Ct. 2239, 2245-2246, 576 U.S. __ (2015) (citing *Pleasant Grove City v Summum*, 555, U.S. 460, 129 S.Ct. 1125 (2009)) . Moreover, "when the government speaks, it is entitled to promote a program, to espouse a policy, or to take a position. In doing so, it represents its citizens and it carries out its duties on their behalf." *Id.* at 2246 (citing *Summum*, 555, U.S. 460, 129 S.Ct. 1125 (2009). "The [designs] that are accepted, therefore, are meant to convey and have the effect of conveying a government message, and they thus constitute government speech." *Id.* at 2250 (quoting *Summum,* 555 U.S. at 472, 129 S.Ct. 1125). In fact, the government may exercise this freedom even when it is receiving "assistance from private sources for the purpose of delivering a government-controlled message." *Id.* at 2251 (quoting *Summum,* 555 U.S. 460 , 468, 129 S.Ct. 1125) (citations omitted).

10

In *Walker*, the United States Supreme Court ruled that "specialty license plates issued pursuant to [a State's] statutory scheme convey *government* speech" as opposed to private speech. Id. at 2246 (emphasis added). In coming to their conclusion that Texas could exclude the Sons of Confederate Veteran's proposed license plate design, the Court examined three factors that they previously considered in *Summum* involving monuments erected in a city park. *Id*. at 2247 (citing *Summum*, 555 U.S. 460 (2009)). In each case, the Court examined the history of the program, the public's association of the program with the government and the editorial control exercised by the government. *Id*. at pp. 2248-2249.

In the case at bar, a similar analysis leads to the same conclusion that the speech at issue is *government* speech and not private speech; as such, the government has the right to choose what it says (even with the assistance of private partners) and no further analysis is warranted. First, by the Plaintiff's own admission, the history of the Commonwealth's Welcome Centers and Safety Rest Areas shows that they have "historically . . . existed" for a "variety of purposes" including "dissemination of information and promotion of tourism." (Compl. ¶11). The rest areas and welcome centers "are to promote the safety and well-being of the traveling public by providing clean, safe attractive, neutral, convenient, accommodating facilities for travelers of all ages who seek nourishment, hydration, convenience products, rest, rest room facilities, exercise and travel-related information." (Compl. Exhibit E). In this case, the Plaintiffs only challenge the "travel-related information" function of the rest areas. Further, Plaintiffs acknowledge the Commonwealth has a history of using rest areas and welcome centers for communicating messages to the public. (Compl. ¶ 11). Rest areas have always been a source of information for the traveler, including a map of Virginia; places to visit while in Virginia; and tourist pamphlets and destination brochures.

Like the license plates in *Walker* and the monuments in *Summum*, the Commonwealth's welcome centers, rest areas and the literature distributed therein are "closely identified in the public mind with the [Commonwealth]" of Virginia. *See Walker,* 135 S.Ct. at 2248 (citing Summum 555 U.S. at 472, 129 S.Ct. 1125). These areas are not merely a place for a traveler to rest, get a drink, or use the restroom. They are literally "Welcome Centers" for the Commonwealth. These are the places that a traveler will stop and receive information about Virginia. The traveler will form his or her first impression of Virginia (and quite possibly their last impression) based upon much of what he or she finds in that Welcome Center, including all the written material. Members of the general public will certainly associate anything found in any rest area or Welcome Center with the government of the state, from tourism pamphlets to information about road conditions to road maps of Virginia and maps of wineries and breweries across the Commonwealth. Virginia is clearly promoting a program – tourism in Virginia and the variety of things that are available to be seen or to visit in Virginia. Any person would assume that these items are being promoted and approved by the State of Virginia.

Finally, the Commonwealth's efforts to exercise editorial control over this program are numerous and clear in this instance. Exhibits E, F, G and H to the Complaint plainly and conclusively demonstrate strict controls and specific guidelines over what can and what cannot be distributed. In addition to the regulation which states that, among other things, there shall be no "threatening, abusive, boisterous, insulting or indecent language. . ." used at a rest stop or wayside, there is the 2013 VDOT policy detailing standards to guide contractors on acceptable speech for written materials at rest stops, and a contract between VTC and HIM containing fourteen restrictions on content for any written material that is to be displayed in any welcome center or rest area within the Commonwealth. *See* 24 VAC 30-50-10(L); Compl., Exs. E and G.

Any one of these alone would be sufficient to exercise editorial control over the content of the written materials at the rest stops, however all three taken together clearly indicate the Defendants' intent to exercise their right to control the content of what is placed in the rest stops. It is clear from Exhibits E, F, G and H of the Complaint that Virginia has clearly stated what it does not want printed. Similarly, in the recent decision in *Sons of Confederate Veterans, v. Holcomb*, the Court states that the Commonwealth can identify "speech it did not want to make." 2015 U.S. Dist. LEXIS 103603 * 10 (E. D. Va. Aug. 6, 2015), The State Defendants have not done anything different in the instant case.

Similar to the license plates in *Walker,* and the monuments in *Summum*, written materials at state sponsored rest stops are so closely identified with the state they qualify as government speech. The materials "that are accepted, therefore, are meant to convey and have the effect of conveying a government message, and they thus constitute government speech." *Id.* at 2250 . Therefore, as government speech, the ads are not private speech and the government is entitled to speak for itself and is "not barred by the Free Speech Clause from determining the content of what it says," even if that content comes with the assistance from private vendors, such as in this case. *Id*. at 2245; 2251. Further, as evidenced by Exhibits E, F, G and H to the Complaint, the clear policy and message being espoused by those content requirements is to promote Virginia tourism. Thus, the restrictions set forth in Exhibits E, F, G and H are reasonable efforts by the State to establish government speech in order to promote Virginia and its tourism industry. While the facts of the instant case are different from <u>Walker</u>, under the reasoning and rationale of *Walker*, the Complaint must fail and the Complaint must be dismissed.

### F. The Imposition of Fees is Not a Violation of Free Speech

The Plaintiffs allege that they have been forced to "pay significant fees" in order to have their publications placed in the Welcome Centers and Safety Rest Areas. (Compl. ¶ 22). The Plaintiffs' allegations on fees are, however, raised in the context of the content restrictions as a denial of Free Speech. But, the Plaintiffs do not articulate any substantive argument why the fees are unconstitutional except to assume if Exhibits E, F, G and H are vague and unduly burdensome, then the fees must also be unconstitutional. The Plaintiffs point to no nexus between the fees and the content restrictions which they attack. Even if there were no content restrictions, the fees could still be charged. Therefore, the allegations raised by the Plaintiffs to support any prayer for relief that the fees are unconstitutional are without sufficient basis to demonstrate how such fees could be unconstitutional.

Further, as noted above, the Defendants have noted that the "speech" involved in this case is "government speech," and thus, this Court does not reach the issue of fees.

### G. VDOT And VTC Are Not A "Person" under 42 U.S.C. § 1983

The Plaintiffs have named VDOT and VTC, among others, as defendants in this action under 42 U.S.C. § 1983. That provision of federal law is available to enforce violations of federal laws by "persons acting under color of state law." The Courts have clearly and repeatedly stated that a "person" under that law does not include a state or a state agency. *See e.g. Will v. Michigan Depart. of State Police*, 491 U.S. 58, 71 (1989). Therefore, VDOT and VTC should be dismissed from this case.

### H. Secretary Layne And Charles A. Kilpatrick, P.E. Are Not Proper Parties

#### a. Secretary Layne

The Plaintiffs have made no allegations whatsoever that Secretary Layne has had any personal involvement in the promulgation of any regulation or guideline challenged in this case, or that he has had any personal involvement in the signing of any contract between VTC and HIM,

only that he is the Secretary of Transportation and he shares "responsibility for oversight of VDOT." (Compl. ¶ 5). The Plaintiffs have sued Secretary Layne in his official capacity and only seek declaratory and prospective injunctive relief. In *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977), the Court stated the doctrine of respondeat superior has no application under 42 U.S.C. § 1983 when there is no personal connection between the named party and the denial of a constitutional right. Further, simply having general authority over a state agency should not be sufficient to make government officials the proper parties to litigation challenging the law. *See Monell v. Dep't. of Social Servs.*, 436 U.658, 694, 98 S.Ct. 2018 (1978), *See also Iqbal*, at 667. Defendant Layne believes that these principles, as a general concept, should be applicable in the instant case.

The Plaintiffs solely rely on Secretary Layne's general authority over VDOT to suggest that he is a proper party to this action. There is nothing alleged by the Plaintiffs establishing that Secretary Layne has had a hand or any involvement whatsoever in the enforcement or establishment of the regulation or guidelines challenged herein. Secretary Layne had no involvement as Secretary of Transportation in any contractual agreement between VTC and HIM. Also, VTC is not an agency under his general responsibilities. See § 2.2-228 of the Code of Virginia. And as Secretary of Transportation, while he may be a member of the Commonwealth Transportation Board and its chairman, see § 33.2-200, he is non-voting member except in cases of a tie. Thus, Plaintiffs fail to state a claim against Secretary Layne and Secretary Layne clearly should be dismissed from this case.

b.    Charles A. Kilpatrick, P.E.

The Plaintiffs have also made no allegations whatsoever that Charles A. Kilpatrick, P.E., as Commissioner of VDOT, has had any personal involvement in any enforcement of any regulation or guideline challenged in this case against the Plaintiffs, or that he has had any personal involvement in the signing of any contract between VTC and HIM, only that he is the Commissioner of VDOT and he shares "responsibility for oversight of VDOT." (Compl. ¶ 5). The Plaintiffs also state that under the regulation challenged herein (24 VAC 30-50-10(L)), the "final

decisional authority" is with the Commissioner of VDOT. (Compl. ¶ 16). However, as with Secretary Layne, the Plaintiffs have not cited or referred to one instance where Charles A Kilpatrick, P.E. has acted under that regulation with regard to any publication of the Plaintiffs. As the Court stated in *Iqbal,* at 667, "[A]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Plaintiffs fail to allege any personal misconduct by the present Commissioner of VDOT, Charles A. Kilpatrick, P.E. And as Commissioner of VDOT, while he may be a member of the Commonwealth Transportation Board and its vice-chairman, see § 33.2-200 of the Code of Virginia, he is non-voting member except in cases of a tie when he is presiding the absence of the Chairman. Thus, Plaintiffs fail to state a claim against Charles A. Kilpatrick, P.E. and he clearly should be dismissed from this case.

## I. The Complaint Does Not State a Basis for Injunctive Relief

In *Myers v. Loudoun County School Bd.*, 500 F.Supp. 2d 539 (E.D. Va. 2007), an individual sought to, among other things, bar the School Board from prohibiting him from handing out leaflets off school property under his right to Free Speech. The Court stated that a "plaintiff seeking injunctive relief must ordinarily show that an actual controversy exists and that as a result he faces the threat of immediate and irreparable harm." *Id.* at p. 547. In Myers, at 548, the Court noted that the plaintiff had not alleged any further incidents beyond a single incident where he was prevented from distributing leaflets, and thus, the Court found "there is no active dispute or threat of immediate harm for the Court to address." In the instant case, there is no incident whatsoever alleged by the Plaintiffs.

As in that case, the Plaintiffs in the instant case have made no showing of an ongoing violation of federal law or any actual controversy. The Plaintiffs have not alleged that they ever approached the State Defendants about any specific advertisement or had any advertisement rejected. Therefore, there is no basis or case for injunctive relief in the instant Complaint.

## IV.     Conclusion

The Plaintiffs' Complaint does not state a claim on its face for which relief could be granted for the reasons stated herein. For those reasons, the State Defendants, by counsel, ask that the Motion to Dismiss be sustained and that this case be dismissed with prejudice. The State Defendants also respectfully request such further and additional relief as this Court deems just and appropriate.

                                              Respectfully submitted,

                                              Virginia Department of Transportation
                                              Virginia Tourism Corporation
                                              Secretary Aubrey L. Layne, Jr.
                                              Commissioner Charles A. Kilpatrick, P.E.

                                              By   /s/  Eric K. G. Fiske_____
                                                                              Counsel

Mark R. Herring
Attorney General of Virginia

Jeffrey M. Bourne
Deputy Attorney General
Virginia State Bar # 75951

Jeffrey R. Allen
Senior Assistant Attorney General
Virginia State Bar # 17710

Eric K. G. Fiske
Senior Assistant Attorney General
Virginia State Bar # 15814
Office of Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 692-0552
(804) 692-1647 (fax)
efiske@oag.state.va.us

Grant E. Kronenberg
Assistant Attorney General
Virginia State Bar # 65647

Elizabeth B. Myers
Assistant Attorney General
Virginia State Bar # 80739

Office of Attorney General
900 East Main Street
Richmond, Virginia 23219

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing State Defendants' Memorandum of law in Support of Motion to Dismiss with the Clerk of the Court using the CM\ECF system, and I further certify that a true and accurate copy of the foregoing State Defendants' Memorandum of Law in Support of Motion to Dismiss was mailed via first class mail, postage prepaid, on this the 20th day of August, 2015, to:

| Kevin E. Martingayle, Esquire | Highway Information Media, LLC |
|---|---|
| Bischoff Martingayle, P.C. | Registered Agent Services, LLC |
| 3704 Pacific Avenue, Suite 300 | Registered Agent |
| Virginia Beach, Virginia 23451 | 1500 Forest Avenue, Suite 271 |
|  | Richmond, Virginia 23229 |

*Counsel for Plaintiffs*

                By:   /s/ Eric K. G. Fiske
                        Virginia State Bar # 15814
                        Office of Attorney General
                        900 East Main Street
                        Richmond, Virginia 23219
                        (804) 692-0552
                        (804) 692-1647 (fax)
                        efiske@oag.state.va.us